OPINION OF THE COURT
Simons, J.
The issue is whether a lender, by tendering a return of excess interest paid by a borrower on a usurious loan, may establish a right to recover the loan principal plus legal interest. Section 5-511 of the General Obligations Law provides otherwise but defendants claim that the 1965 amendment to section 5-519 of the General Obligations Law, not previously interpreted by this court, permits them to relieve themselves of the illegality and revive the void contract. We hold that it does not.
The question arises from these facts. Plaintiff and Patrick Laurent were tenants in an apartment building that was converted to cooperative ownership. Plaintiff elected to purchase their apartment but she was unable to secure a conventional mortgage without Laurent, who was then out of the country. Accordingly, she consulted Martin Harris who was attorney for Laurent and his brother. Harris tried to secure a mortgage but when he was unable to do so, he approached some of his clients in an effort to arrange a short-term loan for plaintiff that could be superseded by a mortgage upon *45 Laurent’s return. Defendant Mensch was one of those Harris approached. She agreed to make the loan by liquidating all or part of her interest in a Dreyfus account that paid a return of approximately 18% per year, provided that the loan was fully secured and that the return was sufficient to compensate her for any loss arising from the liquidation of her account. Harris claimed that to ensure this he contacted the Banking Department and was told that a return of 21% was permissible. In fact, the maximum allowable interest rate at the time, as fixed by Banking Law § 14-a, was 16%.
On November 17, 1981, plaintiff purchased the cooperative apartment. The purchase was financed by her check for $14,161.33 and a check for $25,000 drawn on the Mensch account with Dreyfus Liquid Assets, Inc. payable to the order of attorney Harris, as her agent, and indorsed by him. Harris delivered the checks to the cooperative’s sponsor, and at the same time plaintiff executed and delivered to Harris her note for $25,000, bearing interest at the rate of 21%, and payable within one year. The note was guaranteed by Laurent’s brother. As additional security, plaintiff delivered to Harris a stock certificate, representing her interest in the cooperative corporation, and an irrevocable stock power.
On November 2, 1982, 15 days before the loan became due and after plaintiff had paid interest for 11 months, plaintiff’s attorneys sent a letter to Harris stating that the loan was usurious. Harris then sent plaintiff a check for the excess over the allowable interest on the loan. When the check was returned by her attorneys, Harris sent it to plaintiff once more, denominating it an unconditional tender made pursuant to law. She again rejected it and brought this action seeking judgment declaring that the loan was illegal because usurious, that the note and stock power were void and canceled, and directing that these documents and the stock certificate be returned to her along with all sums paid. Plaintiff moved for summary judgment and Special Term granted her the requested relief.
A divided Appellate Division reversed and remanded the action for trial. Justice Bloom, writing for himself and Justice Carro, construed General Obligations Law §5-519 as permitting a lender who tenders back the excess interest on a usurious loan to recover the principal and legal interest. Justice Asch concurred in that result but on different grounds. He viewed the transaction as one involving a purchase-money *46 mortgage and thus exempt from the provisions of the usury laws. Justice Sandler, joined by Justice Lynch, dissented. Although he found the statutory language could be read as inconsistent with the expressed legislative intention of conforming the statute to prior judicial precedent, he believed that the amendment was not intended to overturn decisions holding that a tender back of excess interest does not entitle the lender to recover the underlying debt and unpaid lawful interest. In Justice Sandler’s view of the case the lender was entitled to only lawful interest previously paid. We find no inconsistency between amended section 5-519 of the General Obligations Law and prior case law and concur in the dissenters’ result. Accordingly, the order of the Appellate Division should be modified to grant plaintiff partial summary judgment declaring the note and stock power void and ordering these, as well as the stock certificate, returned to her, and directing defendants to pay plaintiff the excess over the lawful interest previously paid on the loan.
Preliminarily, Justice Asch’s characterization of the transaction as a purchase-money mortgage must be addressed. Purchase-money mortgages constitute a narrow exception to the restrictions on interest found in the usury laws and thus if this transaction involved a purchase-money mortgage plaintiff might well have been bound by her agreement (see, Mandelino v Fribourg, 23 NY2d 145, 151). Defendants did not raise this defense at Special Term. Apparently they never considered their transaction to be in the nature of a mortgage, and correctly so. A purchase-money mortgage is generally defined as "a mortgage executed at the time of purchase of the land and contemporaneously with the acquisition of the legal title, or afterward, but as part of the same transaction, to secure an unpaid balance of the purchase price” (38 NY Jur, Mortgages and Deeds of Trust, § 7, at 25 [citing Boies v Benham, 127 NY 620]). Ms. Mensch, the lender in this case, was neither a seller of real property nor did she take back a mortgage to secure money borrowed to acquire any such property.
Turning to the main issue, the consequences of the lender’s offer to tender back to plaintiff the amount of excess interest above the legally authorized rate she paid on this loan are governed by General Obligations Law § 5-519. It provides: "Every person who shall repay or return the money, goods or other things so taken, accepted or received, or the value thereof, shall be discharged from any other or further forfeiture or penalty which he may have incurred under sec *47 tians 5-511 or 5-513, by taking or receiving the money, goods or other things so repaid, or returned, as aforesaid.” (Emphasis added.) The dispute centers on the italicized words. Defendants contend that nullification of the usurious contract is one of the penalties provided by section 5-511[1] and thus the language of section 5-519 permits recovery of the principal and lawful interest if the excess is tendered to the borrower. Plaintiif counters that defendants’ construction is inconsistent with judicial precedent and with the intention of the drafters of the legislation and, further, that such a construction permits easy avoidance of the proscriptions against excessive interest because any lender faced with a disavowal of a usurious loan could recover it, notwithstanding the illegality, merely by tendering the excess interest to the borrower.
Analysis starts with an understanding of General Obligations Law §§ 5-511 and 5-513. Section 5-511 deals with two types of lenders. First, referring to loans made by other than *48 banks or savings and loan associations, it declares that all bonds, notes, contracts, deposits of goods, and the like arising within a usurious transaction are void. Thus, when a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoin prosecution on them and order that all documents and collateral be canceled and surrendered. Second, section 5-511 provides that when the lender is a bank or savings and loan association, the usurious transaction is not void, but any interest thereon is forfeited. A penalty is also assessed: any excess interest paid by a borrower to the institution may be recovered from it in twice the amount paid. Section 5-513 provides that a borrower who is subject to a usurious transaction may bring an action to recover the excess interest paid on the loan.
Contrary to defendants’ contentions, section 5-519’s bar to further penalties or forfeitures after the tender of illegal interest does not foreclose a judicial determination that a usurious instrument is void, and that the underlying transaction and supporting documents have no legal force or binding effect. Such a determination is not just "another” penalty or forfeiture contained in sections 5-511 or 5-513 and it should not be confused with the penalties or forfeitures imposed by article 5 of the General Obligations Law. A penalty is commonly understood to be the exacting of a sum of money as punishment for performing a prohibited act, or for not performing a required act (see, Black’s Law Dictionary, at 1020 [5th ed 1979]), e.g., the payment of double the amount of excess interest required by section 5-511. A forfeiture is the loss of a right by the commission of a crime or fault (id., at 584), e.g., the forfeiture of interest provided in section 5-511. A legal determination that a transaction governed by section 5-511 is void is not a penalty or a forfeiture. It is no more than the implementation of a statutory expression of the familiar rule that illegal contracts, or those contrary to public policy, are unenforceable and that the courts will not recognize rights arising from them (McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 469; Sternaman v Metropolitan Life Ins. Co., 170 NY 13, 19, rearg denied 170 NY 616). The law leaves the parties to such agreements where it finds them (Hettich v Hettich, 304 NY 8; see generally, 21 NY Jur 2d, Contracts, §§ 147-186). Accordingly, section 5-519 does not prevent a declaration of the invalidity of the debt, notwithstanding the *49 tender of excess interest improperly charged. The lender’s tender may avoid future litigation but it cannot revive the void contract.
This conclusion is confirmed by the history of usury laws in this State and by judicial precedent. That historical background was thoroughly analyzed in Curtiss v Teller (157 App Div 804, affd 217 NY 649), the leading case on the subject, and was reviewed by the Appellate Division below (110 AD2d 550, 553-556). At the time Curtiss was decided, the civil usury laws were codified in article 25 of the General Business Law (Consol Laws, ch 20, L 1909, ch 25). The Curtiss court stated that those statutes did two separate things, they "(1) declare^] the usurious transaction void, and (2) provide[d] for forfeitures and penalties against the usurer” (Curtiss v Teller, supra, pp 807-808; see also, Bowery Sav. Bank v Nirenstein, 269 NY 259). In thus interpreting the statute, the court held that the tender-back provisions of section 376[2] would not save the lender "the money which he had actually advanced upon the usurious loan, together with interest thereon” (id., p 817). In 1963 section 376 was reenacted as section 5-519 of the General Obligations Law and the usury provisions of the General Business Law were consolidated into it, the sponsor of the legislation noting that no change in the existing law on the subject was intended (1963 NY Legis Ann, at 103). Inasmuch as the recodification did not alter the words of the statute and was not intended to alter the effect or judicial interpretation of it, perforce, it did not change the consequences of a tender back of excess interest.
There was a significant change of the language of section 5-519 in 1965, however. At that time a State commission investigating organized crime’s loan-sharking activities in New York determined that, for all practical purposes, there were no criminal sanctions for usury, whatever the effective rate of interest charged, and it recommended extensive changes in the law to protect citizens against such crimes (see, State Commission of Investigation, "The Loan Shark Racket”, at 81- *50 82 [Apr. 1965]).[3] The Legislature subsequently enacted comprehensive legislation to deal with this problem, the express intent of which was to "amend the penal law and the general obligations law, in relation to criminal usury and possession of records of a criminally usurious loan” (L 1965, ch 328; see, 1965 NY Legis Ann, at 49). Its approach was to create the crime of usury with enactment of other provisions designed to implement and strengthen that basic purpose (see, 1965 NY Legis Ann, at 49). The sole amendment to the General Obligations Law was the alteration of language in section 5-519 (compare, General Obligations Law § 5-519, pp 46-47, ante, with General Business Law former § 376, p 49, n 2, ante). This alteration removed the words "acquitted” and "punishment” and added the phrase "under sections 5-511 or 5-513”, the words prompting the present dispute, in order to distinguish the penalties of civil usury laws from the punishments of the criminal usury laws (see, Hammelburger v Foursome Inn Corp., 54 NY2d 580, 591, n 2). In so amending the section, the sponsor stated that the Legislature intended to: "clarify and conform its language to reflect the original purpose of [section 5-519]. The amendment will merely codify the present judicial interpretation of the section making it very clear that the penalties which are relieved by a re-payment under this section are those imposed by the preceding sections of Article 5 * * * The bill would in no way modify or amend existing laws and regulations which limit or define authorized and lawful rates of interest and the conduct of money lending business. The bill is designed solely to provide a weapon against the criminal loan shark where none now exists.” (1965 NY Legis Ann, at 47 [emphasis supplied].)
The "present judicial interpretation” the amendment intended to reflect was the interpretation we affirmed in Curtiss v Teller (157 App Div 804, affd 217 NY 649, supra), namely, that a usurious transaction is void ab initia, and a return of excess interest cannot save to the lender the money actually *51 advanced, or the interest due on the loan (see, id., p 817). Consequently, although defendants need not return the lawful interest plaintiff has already paid, they cannot recover either the money loaned or the interest remaining due in this transaction.
The order below should be modified to grant plaintiff partial summary judgment declaring the note and the stock power void and ordering their return together with the stock certificate; defendants should be ordered to return to plaintiff the excess over the legal interest paid on the loan, and the matter should be remitted to Supreme Court, New York County, for a determination of the amount due. As so modified, the order is affirmed, with costs. The certified question is answered in the negative.
Chief Judge Wachtler and Judges Meyer, Kaye, Titone and Hancock, Jr., concur; Judge Alexander taking no part.
Order modified and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed, with costs to plaintiff. Question certified answered in the negative.

. Section 5-511 provides:
"Usurious contracts void
"1. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void, except that the knowingly taking, receiving, reserving or charging such a greater sum or greater value by a savings bank, a savings and loan association or a federal savings and loan association shall only be held and adjudged a forfeiture of the entire interest which the loan or obligation carries with it or which has been agreed to be paid thereon. If a greater sum or greater value has been paid, the person paying the same or his legal representative may recover from the savings bank, the savings and loan association or the federal savings and loan association twice the entire amount of the interest thus paid.
"2. Except as provided in subdivision one, whenever it shall satisfactorily appear by the admissions of the defendant, or by proof, that any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation of the foregoing provisions, the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled.”
Section 5-513 provides:
"Recovery of excess
"Every person who, for any such loan or forbearance, shall pay or deliver any greater sum or value than is allowed to be received pursuant to section 5-501, and his personal representatives, may recover in an action against the person who shall have taken or received the same, and his personal representatives, the amount of the money so paid or value delivered, above the rate aforesaid.”

. General Business Law § 376 provided: "Return of excess a bar to further penalties. Every person who shall repay or return the money, goods or other thing so taken, accepted or received, or the value thereof, shall be acquitted and discharged from any other or further forfeiture, penalty or punishment, which he may have incurred, by taking or receiving the money, goods or other things so repaid, or returned, as aforesaid” (Recodified at General Obligations Law § 5-519 [L 1963, ch 576]).

. The Commission’s report noted that, in 1965, "law enforcement personnel have available only two usury laws which carry penal sanctions. One is Section 357 of the Banking Law, the other, present law, Section 2400 of the Penal Law” (State Commission of Investigation, "The Loan Shark Racket”, at 81). Section 357 of the then Banking Law penalized as a misdemeanor "loans of $800 or less bearing more than the authorized rate of interest, made to individuals by unlicensed lenders” (id,.). Section 2400 of the then Penal Law penalized usury as a misdemeanor "only when tools, implements of trade or household goods are taken as security” (id.).