■ Oliveto Holdings, Inc., Respondent, v Alfred Rattenni, Appellant, et al., Defendants. [973 NYS2d 321]—

In an action to foreclose a mortgage, the defendant Alfred Rattenni appeals from (1) an order of the Supreme Court, Putnam County (Nicolai, J.), dated November 28, 2011, which denied his motion pursuant to CPLR 4404 (b) to set aside a decision of the same court dated June 30, 2011, made after a nonjury trial, and for judgment as a matter of law on the ground that the subject mortgage loan was usurious, and (2) a judgment of foreclosure and sale of the same court entered March 22, 2012, upon the decision.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment of foreclosure and sale is reversed, on the law and the facts, the defendant's motion pursuant to CPLR 4404 (b) to set aside the decision and for judgment as a matter of law on the ground that the subject mortgage loan was usurious is granted, the complaint is dismissed, and the order is modified accordingly; and it is further,

Ordered that the matter is remitted to the Supreme Court, Putnam County, for the entry of a judgment in accordance with General Obligations Law § 5-511 (2); and it is further,

Ordered that one bill of costs is awarded to the defendant Alfred Rattenni.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment of foreclosure and sale (see CPLR 5501 [a] [1]).

In September 2006, in return for a loan of $275,000, Ronald Mangini, as attorney-in-fact for the defendant Alfred Rattenni, executed a six-month balloon promissory note (hereinafter the note) in favor of the plaintiff for the principal sum of $275,000, with a stated interest rate of 12% per annum. As security for the note, Mangini executed and delivered to the plaintiff two mortgages on property owned by Rattenni, one on a single-family residence in Carmel, New York (hereinafter the Carmel house), and one on a condominium in Westchester County. At the closing, the plaintiff withheld a 5% "origination fee" of $13,750 from the loan principal. Rattenni had the option to extend the terms of the note for an additional six-month period upon payment of a "non-refundable service charge" of 2% of the principal sum, or $5,500.

Mangini made interest payments from Rattenni's accounts for the six-month term of the note and then exercised the option to extend the note for a second six-month term and paid the $5,500 extension fee. In May 2007, Mangini handled the sale of Rattenni's condominium in Westchester County and used $125,000 of the proceeds to pay down the loan principal and release the property from the mortgage. When the remaining principal sum of $150,000 became due and was not paid, the plaintiff commenced this action to foreclose on the Carmel house. Rattenni raised defenses alleging that he did not authorize Mangini to execute the note and mortgage and that the interest charged on the loan exceeded the civil usury limit, rendering the loan transaction void. In a decision made after a nonjury trial, the Supreme Court determined that Mangini had authority to enter into the transaction on Rattenni's behalf pursuant to two powers of attorney, the civil usury limit did not apply to this loan, and even if the civil usury limit was applicable, the effective interest rate did not exceed the civil usury limit. On March 22, 2012, the court entered a judgment of foreclosure and sale upon the decision.

"On an appeal from a judgment after a nonjury trial, this Court's power to review the evidence is as broad as that of the

trial court, and this Court may render the judgment it finds warranted by the facts, giving due regard to the trial court, which had the advantage of assessing the credibility of the witnesses" (*Rock v Rock*, 100 AD3d 614, 615-616 [2012]; *see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]).

The Supreme Court correctly determined that the plaintiff was entitled to rely upon the statutory short form power of attorney granting Mangini authority with respect to, among other things, real estate transactions, which Rattenni executed two days before the closing (*see* General Obligations Law § 5-1502A). The power of attorney was facially valid and unrevoked at the time of the closing, and the "circumstances surrounding its presentation would not have put a reasonable person on notice that something was amiss" (*Neildan Constr. Corp. v Angona*, 209 AD2d 389, 390 [1994]; *see Hudson Enters. v Wasserman*, 256 AD2d 550, 550-551 [1998]; *Grasso v Fiumara*, 167 AD2d 510 [1990]; *see also Yabkow v Yabkow*, 89 AD3d 932, 933 [2011]; *Crandall v Personal Mtge. Corp.*, 210 AD2d 981, 982 [1994]; *cf. Collision Plan Unlimited v Bankers Trust Co.*, 63 NY2d 827, 831 [1984]).

Under the civil usury statute, the maximum interest rate on a loan is 16% per annum (*see* General Obligations Law § 5-501 [1]; Banking Law § 14-a [1]). General Obligations Law § 5-501 (6) (a) provides that the 16% maximum interest rate is not applicable "to any loan or forbearance in the amount of [$250,000] or more, other than a loan or a forbearance secured primarily by an interest in real property improved by a one or two family residence." Contrary to the plaintiff's contention, the plain language of section 5-501 (6) (a) does not require that a one- or two-family residence securing a loan be occupied by the owner for the civil usury limit to apply. Despite using the narrowing term "occupied by the owner" or "owner-occupied" in other usury statutes (*see* General Obligations Law §§ 5-501 [3]; 5-527 [2]), and despite being aware of preexisting usury regulations that applied differently to one- and two-family residences occupied by the owner (*see* 3 NYCRR 4.2-4.4), the Legislature specifically chose not to include the term "occupied by the owner" in the statute (*see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55, 60 [2013]). Nor does the commercial or personal nature of a loan have a bearing on whether the civil usury limit will apply to a loan secured by a one- or two-family residence under the plain language of the statute.

In order for the civil usury limit to apply to a loan over

$250,000, the statute requires that the loan be "secured primarily by an interest in real property improved by a one- or two-family residence" (3 NYCRR 4.2-4.4). Here, the mortgage on the Carmel house provides that Rattenni mortgaged the property as security for the full amount of the loan, $275,000. Thus, under the plain terms of section 5-501 (6) (a), the civil usury limit is applicable to the loan transaction.

A borrower bears the burden of proving each element of usury by clear and convincing evidence, and usury "will not be presumed" (*Freitas v Geddes Sav. & Loan Assn.*, 63 NY2d 254, 261 [1984]). "In determining whether a transaction is usurious, the law looks not to its form, but its substance, or real character" (*O'Donovan v Galinski*, 62 AD3d 769, 769 [2009] [internal quotation marks omitted]; *see Ujueta v Euro-Quest Corp.*, 29 AD3d 895, 895 [2006]). Here, the evidence at trial established that the plaintiff retained half of the 5% origination fee, or $6,875, and $3,300 of the $5,500 extension fee, and it distributed the remainder of those fees to the principals of an entity that performed broker-related services in connection with the transaction. The parties do not dispute that the amounts retained by the plaintiff are included as interest (*see* General Obligations Law § 5-501 [2]; Banking Law § 14-a [2]).

To determine whether the interest charged exceeded the usury limit, we must apply the traditional method for calculating the effective interest rate as set forth in *Band Realty Co. v North Brewster, Inc.* (37 NY2d 460, 462 [1975]). Viewing the loan as a one-year loan, the total annual interest is $43,175 ($33,000 in annual interest at 12% on $275,000, plus $10,175 in retained interest fees). The net loan funds advanced, i.e., the loan principal ($275,000) minus the retained interest ($10,175), equals $264,825. Expressed as a percentage of the net loan funds advanced, the $43,175 in total annual interest equals 16.3% of $264,825. The effective interest rate of 16.3% exceeds the civil usury limit, and the loan was therefore usurious. As such, we need not reach Rattenni's contention that the total amount of the origination and extension fees should be included as interest.

Since the loan was usurious, the loan transaction and the associated note and mortgage are void, the plaintiff is precluded from recovering the unpaid principal of $150,000 and all outstanding interest, and all the documents and collateral must be cancelled and surrendered (*see* General Obligations Law § 5-511 [2]; *Seidel v 18 E. 17th St. Owners*, 79 NY2d 735, 740 [1992]; *Szerdahelyi v Harris*, 67 NY2d 42, 47-48, 50-51 [1986]). Dillon, J.P., Angiolillo, Leventhal and Lott, JJ., concur.